IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES M. NIELSEN, M.D. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-08-CV-2239-B-BD |
| | § | |
| ALCON, INC., ET AL. | § | |
| | § | |
| Defendants. | § | |

## ORDER

In a joint status report filed on September 8, 2010, the parties in this patent infringement action ask the court to determine whether plaintiff is entitled to certain financial information pertaining to non-infringing products sold by defendants along with their ReSTOR multifocal intraocular lens -- the accused device made the basis of this suit. Plaintiff argues that discovery of this "convoyed" or collateral sales information is relevant to calculating a reasonable royalty rate and other damage issues. Defendants counter that there is no evidence in this case of any convoyed sales and, alternatively, that the broad discovery requested by plaintiff is unduly burdensome and vastly disproportionate to the likelihood of obtaining admissible evidence therefrom.

"'Convoyed' or 'derivative' sales occur where the sale of one thing is likely to cause the sale of another[.]" *Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F.Supp. 1333, 1356 (D. Del. 1994). Using this definition, which is provided by plaintiff, the court is unable to conclude that the sale of ReSTOR lenses is likely to cause the sale of the ancillary products for which plaintiff seeks discovery. In an attempt to make this connection, plaintiff relies on the deposition testimony of two Alcon employees -- Bill Doran and Joel Kuenstler. Doran testified that Alcon "sell[s] all kinds of

tertiary items that are involved in the [cataract removal] procedure," including balance salt solutions, blades, knives, sutures, and drapes that are part of a "custom pack." (*See* Jt. Stat. Rep., Plf. App. at 039). When asked if there are "any other items" that might accompany the sale of ReSTOR lenses that are not included in the custom pack, Kuenstler responded:

> We have a product offering that they are responsible to cover; and within that product offering, they will cover things in the plan which include IOLs, OVDs, balanced salt solution, equipment cassettes, custom pack. And a custom pack is really just a bundling of all of the things I just mentioned, plus some other items that are necessary to perform a cataract surgery.

(*Id.* at 048-49). However, as defendants point out, neither witness testified that the sale of those tertiary items is likely to cause the sale of ReSTOR lenses or vice versa. To the contrary, Kuenstler denied any causal link. After Kuenstler described the other Alcon product offerings, he was asked whether the sale of the ReSTOR lens is what "drives the sale of the other products that you were mentioning[.]" (*Id.*, Def. App. at 23). Kuenstler testified, "I would not make that assumption. *We had sold all of these other products with significant market shares before the ReSTOR was ever introduced[.]*" (*Id.*) (emphasis added). In fact, Kuenstler said that doctors use other Alcon products "in connection with surgeries where they implant lenses other than those that they purchase from Alcon[.]" (*Id.* at 24). In view of this evidence, the court finds that plaintiff is not entitled to discover financial information pertaining to any non-infringing products sold by defendants.

Plaintiff's request for an order compelling defendants to produce documents responsive to Request Nos. 232-245 is denied.

SO ORDERED.

DATED: September 10, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE